**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **JAY CONNOR, individually and on behalf of all others similarly situated,** | Case No.   2:26-cv-1288-DCN |
| Plaintiff, <br> v. | **JURY TRIAL DEMANDED <br> CLASS ACTION** |
| **LEAD ELITE LLC and NRT CAROLINAS LLC DBA COLDWELL BANKER REALTY** | |
| Defendants. | |

<u>**CLASS ACTION COMPLAINT**</u>

**Preliminary Statement**

1. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace."  *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.	Plaintiff Jay Connor ("Plaintiff") brings this action alleging Defendants Lead Elite LLC, NRT Carolinas LLC ("Defendants") violated the  TCPA for contacting his number that he placed on the National Do Not Call Registry.

4.	Plaintiff also brings this action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq*.

5.	The SCTPPA prohibits a company from making a call to a South Carolina telephone number that had been registered on the Do Not Call Registry, as Plaintiff's was prior to receiving the call.

6.	Plaintiff and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

7. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

8. Plaintiff resides in Charleston County, South Carolina.

9. Defendant Lead Elite LLC is a limited liability company located in Nevada.

10. Defendant NRT Carolinas LLC is a real estate company doing business as Coldwell Banker Realty ("Coldwell"), which has an office in Summerville, SC.

## Jurisdiction & Venue

11. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the SCTPPA claims as they arise from the same case and controversy, the telemarketing campaign of the Defendants.

12. The Court has specific personal jurisdiction over the defendants because the calls at issue were made into this District.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the calls to Plaintiff—occurred in this District.

**Statutory Background**

<u>The TCPA</u>

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

15.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

16.     § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

17.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

18.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

19.     FCC regulations also expressly require companies that engage in telemarketing to implement certain policies and procedures for maintaining an internal do not call list. 47 C.F.R. § 64.1200(d).

20.     Courts across the country have held that the 47 U.S.C. § 227(c)(5) provides a private right of action for claims premised on violations of the TCPA implementing regulations

promulgated pursuant to 47 U.S.C. §§ 227(c)(1)-(4), including for example claims under 47 C.F.R. § 64.1200(d).

21. To engage in telemarketing, a company's do not call list procedures must satisfy six specific minimum requirements. 47 C.F.R. §§ 64.1200(d)(1)-(6).

22. One of them is maintaining an internal do not call list. *Id*. at § (d)(6).

23. Another is training personnel regarding the existence and use of the internal do not call list. *Id*. at § (d)(2).

24. And still another is recording do not call requests and complying with them. *Id*. at § (d)(3).

25. If a company fails to satisfy any one of these requirements, it is not entitled to engage in telemarketing (and violates the law by doing so), regardless of whether it satisfies all of the regulation's other requirements.

26. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**<u>Vicarious liability by NRT Carolinas d/b/a Coldwell Banker Realty</u>**

27. NRT is a person, as defined by 47 U.S.C. § 153(39).

28. The calls alleged herein were made on behalf of Coldwell Banker, specifically Sylvia Meyers, a self-described Coldwell sales associate.

29. 47 U.S.C. 227 (c)(5) states that *a person who has received more than one telephone call within any 12-month period by or **on behalf of** the same entity in violation of the*

*regulations prescribed under this subsection may* bring an action in the appropriate court based on the violations.

30.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

30.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

31.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Coldwell may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

32.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

33.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

34.     To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

35.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

36.     Coldwell is legally responsible for ensuring that the company who made the telemarketing calls for them complied with the TCPA, even if Coldwell did not themselves place the calls.

37.     Coldwell knowingly and actively accepted business that originated through illegal telemarketing.

38.     By hiring a company to make calls on its behalf, Coldwell "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

39.     Moreover, Coldwell maintained interim control over the actions of the party that made the call.

40.     For example, Coldwell  had absolute control over whether, and under what circumstances, they would accept a customer.

41.     Coldwell also gave interim instructions to the company that made the calls by providing the parameters of customers, volume of calling and contracts it would purchase.

*42.*     Coldwell ratified the unlawful behavior by accepting leads from Lead Elite after written notice from Plaintiff's counsel of the illegal calls. Specifically, *Plaintiff continued to receive calls as alleged herein on behalf of Coldwell after written and verbal notice to Lead Elite, Sylvia Meyers and Coldwell.*

43.     Finally, the FCC held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Dish*, 28 FCC Rcd. at 6592-93 ¶ 46. Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

### The SCTPPA

44.     On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10 *et. Se*

45.     The SCTPPA prohibits, inter alia, a party from initiating, or causing to initiate, a telephone solicitation directed to a telephone number when a person at that telephone number previously stated a desire not to be contacted again by or on behalf of the person on whose behalf the telephone solicitation is being made. *See* S.C. Code § 37-21-70(A).

46.     The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA.  S.C. Code § 37-21-80.

### Common Allegations

47.     Defendant Lead Elite is a telemarketing company and real estate company.

48.     Defendant Coldwell is a real estate company

49.     Lead Elite made telemarketing calls to consumers on behalf of Coldwell to solicit real estate representation services for its agents, as per Plaintiff's experience.

50.     The callers ask consumers if they are considering purchasing or selling a home, and if they have representation for the potential transactions.

51.     The callers then set up an appointment with a real estate agent for possible representation.

52.     In the calls alleged herein, the callers set an appointment for Sylvia Meyers, a sales associate with Coldwell, to contact Plaintiff  for possible representation.

53.     Coldwell profits from the calls through gaining clients to represent in various real estate transactions.

54.     Defendant Lead Elite also systematically fails to remove consumer phone numbers from its dialing systems when consumers request that Defendant stop calling, as per Plaintiff's experience.

55. Consumers have posted complaints about unsolicited calls they received from Lead Elite, including:

- -BEWARE: Rick from Lead Elite sends out annoying spam marketing texts, despite my number clearly being on the Federal "Do Not Contact" list
  -All of their 5 star reviews on TrustPilot are from people with only 1 review, suspicious...
  -The address on their website is 5150 Mae Ann Ave Reno, Nevada with no suite #, but it's a random strip mall, suspicious...[1]
- Likes to violate the law. Harassing sales reps. All around don't do it. Oh, and when you get there unsolicited calls or text, and your number is on the DO NOT CALL register, report them![2]
- Despite their brazen disregard for my status on the do not call registry, I made the mistake of engaging in an exchange with ****** from Lead Elite LLC to explore the potential for doing business with them.[3]

## Factual Allegations

<u>Calls to Plaintiff</u>

56. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

57. Plaintiff's telephone number, (843) 281-XXXX has been on the National Do Not Call Registry since 2022.

58. The telephone number is for personal calls.

59. The telephone number is Plaintiff's residential line.

---

[1] https://www.trustpilot.com/review/leadelite.ai

[2]https://www.google.com/search?q=lead+elite+llc&oq=lead+elite+llc&gs_lcrp=EgZjaHJvbWU qDwgAECMYJxjjAhiABBiKBTIPCAAQIxgnGOMCGIAEGIoFMhIIARAuGCcYrwEYxwEY gAQYigUyBwgCEAAYgAQyBwgDEAAYgAQyCAgEEAAYFhgeMggIBRAAGBYYHjIICA YQABgWGB4yCAgHEAAYFhgeMggICBAAGBYYHjIICAkQABgWGB7SAQk3MTMyajB qMTWoAguwAgHxBcxs9uHytduM&sourceid=chrome&ie=UTF-8#lrd=0x6e1b916c7bad811:0x506e32cbbd84ecd5,1,

[3] https://www.bbb.org/us/nv/reno/profile/business-development/lead-elite-llc-1166-90047086/customer-reviews

60.     The telephone number is not used for business purposes.

61.     In January 2025, Lead Elite began making unsolicited telephone calls to Plaintiff.

62.     In an effort to identify the source of the calls, Plaintiff provided consent to the sales representative for a follow-up call.

63.     On May 12, 2025, Sylvia Meyers, an agent for Coldwell, contacted Plaintiff confirming the identity of Lead Elite and Coldwell's involvement.

64.     During the May 12, 2025 call, Plaintiff instructed Ms. Meyers to put his number on Defendants' Do Not Call List.

65.     On May 15, 2025, via his attorney, Plaintiff confirmed the request in a letter to Lead Elite and Alex Fuller, the broker for Coldwell Banker in Summerville, SC.

66.     Despite these requests, Plaintiff received at least four additional telemarketing calls from Defendants on May 22, 2025, June 17, 2025 and June 25, 2025.


## Class Action Allegations

67.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

68.     The classes of persons Plaintiff propose to represent are tentatively defined as:

**Lead Elite National Do Not Call Registry Class**: All persons in the United States whose (1) telephone number was listed on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Lead Elite, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**NRT Carolinas National Do Not Call Registry Sub-Class**: All persons in the United States whose (1) telephone number was listed on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Lead Elite, (3) for the purpose of advertising NRT Carolinas

goods or services (4) within a 12-month period (5) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Lead Elite Internal Do Not Call Registry Class**: All persons in the United States whose (1) previously requested that their telephone numbers request not to be called by or on behalf of the entity, (2) but who received more than one telemarketing call from or on behalf of Lead Elite, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **NRT Carolinas Internal Do Not Call Registry Sub-Class**: All persons in the United States whose (1) previously requested that their telephone numbers request not to be called by or on behalf of the entity, (2) but who received more than one telemarketing call from or on behalf of Lead Elite, (3) for the purpose of advertising NRT Carolinas goods or services (4) within a 12-month period (5) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Lead Elite SCTPPA Do Not Call Registry Class**:  All persons with a South Carolina area code to whom (1) listed the number on the National Do Not Call Registry (2) but who received a telemarketing call from or on behalf of Lead Elite (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **NRT Carolinas SCTPPA Do Not Call Registry Sub-Class**:  All persons with a South Carolina area code to whom (1) listed the number on the National Do Not Call Registry (2) but who received a telemarketing call from or on behalf of Lead Elite (3) for the purpose of advertising NRT Carolinas goods or services (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

69.     Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

70.     The classes as defined above are identifiable through phone records and phone number databases that will be obtained through discovery.

71.     The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day.  Individual joinder of these persons is impracticable.

72.     Plaintiff is a member of all classes.

73.     There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

a.     Whether the Defendants violated the TCPA by calling individuals on the National Do Not Call Registry or that had asked to previously no longer receive calls;

b.     Whether the Defendants placed calls without obtaining the recipients' prior consent for the call;

c.     Whether the Defendants violated the SCTPPA by making calls to South Carolina telephone numbers registered with the National Do Not Call Registry; and

d.     Whether Plaintiff and the class members are entitled to statutory damages because of the Defendants' actions.

74.     Plaintiff's claims are typical of the claims of class members.  Plaintiff's claims, like the claims of the classes, arise out of the same common course of conduct by the Defendants and are based on the same legal and remedial theories.

75.     Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

76.     In fact, the Plaintiff has foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

77.     The actions of the Defendants are generally applicable to the classes and to the Plaintiff.

78.      Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

79.      The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

**Legal Claims**

**Count One**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National Do Not Call and Internal Do Not Call Classes)**

80.      Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

81.      Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or

entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A donot-call request must be honored for 5 years from the time the request is made.

82.     Defendant placed calls to Plaintiff and members of the Class without implementing internal procedures for maintaining a list of persons who request not to be called

by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

83.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

84.     The Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendants' conduct, Plaintiff and the other members of the Class are each entitled to up to $1,500 per violation.

**Count Two**
**Violation of the SCTPPA**

85.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

86.     The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a number when the consumer has previously stated a desire not to be contacted again by or on behalf of the person on whose behalf the telephone solicitation is being made. This statement may be made to a telephone solicitor or to the person on whose behalf the telephone solicitation is being made if that person is different from the telephone solicitor. Any request not to receive telephone solicitations must be honored for at least five years from the time the request is made.

87.     The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA, as well as attorneys' fees and costs. S.C. Code § 37-21-80.

**Relief Sought**

For themselves and all class members, Plaintiff request the following relief:

A.     Certification of the proposed classes;

B.     Appointment of the Plaintiff as representatives of the classes;

C.     Appointment of the undersigned counsel as counsel for the classes;

D.     A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and SCTPPA;

E.     An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.     An award to Plaintiff and the classes of damages, attorneys' fees, and costs, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

DATED this 25th day of March, 2026.

PLAINTIFF,
By his attorneys,

By:     _s/ Dave Maxfield_____
David A. Maxfield, Fed. ID 6293
P.O. Box 11865
Columbia, SC 29211
803-509-6800
855-299-1656 (fax)
dave@consumerlawsc.com